UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

J OSEPH P. B ALLAS,

        Petitioner,                 Case No. 2:21-cv-247

v.                                  Honorable Maarten Vermaat

C ONNIE H ORTON,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner has consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions, by a United States Magistrate Judge. (ECF No. 4.) Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.      **Factual allegations**

Petitioner Joseph P. Ballas is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On May 24, 2018, following a two-day jury trial in the Chippewa County Circuit Court, Petitioner was convicted of six offenses related to methamphetamine.[1] On July 19, 2018, the court sentenced Petitioner to concurrent prison terms of 6 to 20 years for each offense.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> In July 2016, Brandon Ballas (BB), defendant's son, and Brittany Johnson (BJ), BB's girlfriend, moved in with defendant. Between July 5, 2016, and July 6, 2016, the three of them purchased 288 pseudoephedrine pills. Suspecting that they were planning to use the pills to make methamphetamine, the police conducted surveillance on July 7, 2016, during which they observed BB and BJ purchasing from stores various components typically used to make methamphetamine. These materials included, in addition to pseudoephedrine, cold packs, batteries, and lighter fluid.
>
> The police followed BB and BJ back to the residence. BB noticed cars gathering and suspected law enforcement and went into the garage. A detective and an agent knocked on the door while another detective positioned himself to observe if anyone fled the house. BB left the garage and a detective detained him in the backyard. The detective testified that, as he arrested BB, he saw evidence of the production of methamphetamine. The police arrested and took all three to the station for questioning. After obtaining a search warrant, a methamphetamine response team searched the residence and seized various items that were consistent with the production of methamphetamine. As part of plea agreements, BB and BJ agreed to testify against defendant.

*People v. Ballas*, No. 344855, 2020 WL 5580450, at *1–2 (Mich. Ct. App. Sept. 17, 2020).

---

[1] The jury that convicted Petitioner was the second jury he faced. According to the Michigan Court of Appeals, "[t]he first trial regarding these activities resulted in a hung jury on nearly all counts." *People v. Ballas*, No. 344855, 2020 WL 5580450, at *1 n.1 (Mich. Ct. App. Sept. 17, 2020).

2

"The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted). Although Petitioner may contest the truth of some of the facts described by the court of appeals, he does not claim that the court's description of the evidence is inaccurate. Moreover, except as discussed specifically below, Petitioner's habeas claims do not depend on a determination that the court of appeals' determinations of fact were unreasonable on the record.

Petitioner raised five issues on appeal to the Michigan Court of Appeals, including the four issues he raises by way of this habeas petition. The court of appeals rejected Petitioner's challenges and affirmed his convictions and sentences. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court raising the same issues he raised in the court of appeals. (Pet., ECF No. 1, PageID.3.) That court denied leave by order entered September 29, 2021. This petition followed.

The petition raises four grounds for relief:

I. Defendant is entitled to a new trial where the trial court's conduct pierced the veil of judicial impartiality resulting in a structural error that denied defendant a fair trial.

II. The trial court erred when it failed to suppress evidence of an unlawful search of defendant's residence when police came to his house with officers at the front and back doors and emergency personnel on the street in front of the house under the pretext of conducting a knock and talk.

III. The trial court erred in failing to suppress evidence seized from the house where the search preceded the issuance of the search warrant.

IV. The defendant's convictions must be vacated where the prosecution vouched for [the] credibility of co-conspirators whom he told the jury had received plea bargains for truthful testimony.

(Pet., ECF No. 1, PageID.6–12.)

**II.     AEDPA standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state

courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

5

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

#### A. Fourth Amendment search and seizure claims (habeas grounds II and III)

Petitioner contends that the search of his residence violated the Fourth Amendment and that evidence discovered and seized by the officers should have been suppressed because it was obtained in violation of the Constitution. Petitioner's claims are barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also McQueen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone*

*v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824.

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g.*, *People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

7

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g.*, *Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down. Rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. The trial court heard Petitioner's motion to suppress the evidence, but denied the motion. The court of appeals addressed Petitioner's challenges to the trial court's decision on the motion to suppress and concluded that the challenges lacked merit, legally and factually. Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application. Even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard. *Gilbert*, 763 F.2d at 824. Accordingly, Petitioner is not entitled to habeas relief on his Fourth Amendment claims.

### B.     Pierced veil of judicial impartiality

Petitioner also challenges the impartiality of the trial judge based on an exchange between the trial judge and Petitioner's counsel during the cross-examination of Petitioner's son. "The state must provide a trial before an impartial judge . . . ." *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)). The courts indulge "a presumption of honesty

and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) 421 U.S. at 47. As the Sixth Circuit has explained,

> [t]he presumption of impartiality stems not merely from the judicial-bias caselaw, *see* [*Withrow*], but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n. 4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30–31 (1992); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926).

*Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013) (parallel citations omitted).

To overcome the presumption of regularity, Petitioner offers the following exchange, as reproduced by the Michigan Court of Appeals:

> In this case, after BB testified on direct examination regarding how he, BJ, and defendant purchased pseudoephedrine and how defendant manufactured methamphetamine, the following exchange occurred during defense counsel's cross-examination of BB shortly after a bench conference off of the record:
>
> *Q*. [BB], please tell me between these two statements which is the lie, okay. You and [defendant] bought components on July 7th or was it you and Brittany? Which is the lie?
>
> *A*. I don't really remember too much of what you're even saying right now.
>
> *Q*. On July 7th, when the cops came to the house, when you got back home, which is the lie. It was you and Brittany buying components or you and [defendant] buying components?
>
> *A*. Me—
>
> [*Prosecutor*]: Objection, Your Honor, as to the form of the question. I think the question is who did he buy it with on the 7th? I don't understand the form.
>
> *The Court:* He said he was at Wal-Mart with Brittany Johnson. On direct examination he said he went to Wal-Mart was [sic] with Brittany Johnson and went to several stores. I mean he's testified to that, so I mean, and that was on July 7th.
>
> [*Defense Counsel*]: So the answer would be the lie would be [defendant] and him.

9

> *The Court*: But he never said [defendant]. I don't know where you're coming up with that.
>
> [*Defense Counsel*]: Actually he did testify to that during my questioning, Your Honor. We have gone there, and he did say that him and [defendant].
>
> [*Prosecutor*]: It's been gone over. Asked and answered three times, Your Honor.
>
> *The Court*: I know, it's just getting very confusing.
>
> [*Defense Counsel*]: Actually, Your Honor, if I'm asking to give a statement, tell me which one's the lie it's not asked and answered. It's having it clarified for the jury.
>
> *The Court*: According to him neither would be lies because he said he went—he said he went to Walgreen's with [defendant] the first time. Then he was observed going to Rite-Aid, Family Dollar, Wal-Mart, McDonald's with Brittany Johnson. I mean it can't be more clear than that.
>
> [*Defense Counsel*]: But then on my question, Your Honor, and perhaps we should be doing this outside the presence of the jury.
>
> *The Court*: Why he's testified to it.
>
> [*Defense Counsel*]: But he did just say to me on my question, Your Honor that it was him and [defendant] running around to buy components. So I do have the right to ask this question to clarify for the jury that is determining my client's life.
>
> *The Court*: Just—if could [sic] get to the point because it's very confusing. I think he's confused. I'm confused. I think Mr. Meidt is confused. If we could just narrow it down to what you're talking about.

*Ballas*, 2020 WL 5580450, at *2. The court of appeals concluded that the exchange did not evidence any partiality:

> The record reflects that, consistent with defense counsel's assertion, BB testified that he and BJ purchased components on July 7, 2016. The record, however, reflects that, contrary to defense counsel's assertion, BB never testified on cross-examination that he and defendant purchased components on July 7, 2016. Review of the direct and cross-examination of BB indicates that the trial court interjected questions to clarify BB's testimony when defense counsel appeared to

> have been confused about BB's testimony. The trial court's brief questioning did not prejudice defendant's case. The exchange between counsel and the trial court does not support defendant's contention that the trial court lacked impartiality or mistreated defense counsel.

*Id*.

Petitioner does not attack the factual foundation of the appellate court's determination; rather, he simply states that "[t]he judge interjected during defense counsel's cross-examination, which pierced the veil of judicial impartiality." (Pet., ECF No. 1, PageID.6.) The factual premise of counsel's question—that BB testified that he purchased components with Petitioner on July 7, 2016, and he testified that he purchased components with BJ on July 7, 2016—is simply false. The prosecutor objected to the form of the question for that reason. The judge effectively sustained the objection, pointing out to counsel that BB testified that he had visited one location with Petitioner on one date and that on July 7, 2016, BB visited several locations with BJ. Counsel disagreed, but he did not ask to read back the testimony. The court of appeals reviewed the testimony and concluded the trial judge was correct.

Petitioner's terse claim that the judge should not have interjected offers nothing to overcome the presumed regularity of the judge's actions or the presumed correct factual finding that the judge was actually in the right regarding BB's testimony and, therefore, the impropriety of Petitioner's counsel's question. Petitioner has failed to demonstrate that the appellate court's factual determinations are unreasonable on the record or that the court's ultimate determination of the partiality claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

11

### C. Prosecutorial misconduct by vouching

Petitioner finally contends that his trial was rendered unfair by prosecutorial misconduct, specifically Petitioner complains that during *voir dire* and again during opening argument "[t]he prosecutor referenced the plea bargains of Brandon Ballas and Brittany Johnson [and that i]n doing so, [the prosecutor] said the two had received plea bargains for truthful testimony." (Pet., ECF No. 1, PageID.12.) Petitioner acknowledges, however, that the prosecutor's statements were not more than that; the statements were not an "overt statement of personal belief" in the truthfulness of the pleading witnesses' testimony. (*Id.*)

The Michigan Court of Appeals flatly rejected Petitioner claim:

> "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v. Dobek*, 274 Mich. App. 58, 64; 732 N.W.2d 546 (2007). "[A] prosecutor is given great latitude to argue the evidence and all inferences relating to his theory of the case." *People v. Thomas*, 260 Mich. App. 450, 456; 678 N.W.2d 631 (2004) (citation omitted). However, the prosecutor cannot vouch for the credibility of prosecution witnesses to the extent that the prosecutor "has some special knowledge concerning a witness' truthfulness." *People v. Bahoda*, 448 Mich. 261, 276; 531 N.W.2d 659 (1995).
>
> In *Bahoda*, our Supreme Court explained that a defendant is not entitled to reversal where the prosecution simply refers to a plea agreement that contained a promise of truthfulness. *Id*. The prosecution may refer to a plea agreement containing a promise of truthfulness as long as the agreement is not "used by the prosecution to suggest that the government had some special knowledge, not known to the jury, that the witness was testifying truthfully." *Id*. (quotation marks and citations omitted).
>
> In this case, during voir dire and in the prosecution's opening statement, the prosecution stated that BB and BJ entered plea bargains in exchange for testifying truthfully. In so doing, the prosecution did not bolster the witnesses' testimony, insinuate that their testimonies were truthful, or intimate that their testimonies should be given greater weight than any other witness. Accordingly, defendant was not denied a fair trial and he is not entitled to any relief.

*Ballas*, 2020 WL 5580450, at *6.

Petitioner does not challenge the court of appeals' factual determination regarding the innocuous nature of the prosecutor's comments. To the contrary, he stands firm on his contention that the prosecutor's mention of plea agreements that require truthful testimony—combined with the facts that BB and BJ had already entered their pleas and been sentenced—suffices to demonstrate impermissible vouching.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because

13

'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645 (1974)). Thus, to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner claims that the prosecutor improperly "vouched" for BB and BJ. The federal courts have generally recognized two types of objectionable vouching. *See United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019); *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328–29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard). The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility. *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388–89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992). In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955). Neither type of vouching is involved in this case.

The Sixth Circuit has explored whether and when a prosecutor's reference to the requirement to testify truthfully in a plea agreement might rise to the level of vouching. Simply inquiring as to the existence of a term in the plea agreement regarding truthful testimony does not violate due process. *See United States v. Reid*, 625 F.3d 977, 984 (6th Cir. 2010) (concluding that "[b]ecause the prosecutor limited his questions and comments to th[e] facts [of the plea agreements] and did not imply any special knowledge regarding the credibility or truthfulness of the cooperating witnesses, the prosecutor did not improperly vouch for the witnesses."); *United States v. Presley*, 349 F. App'x 22, 26–27 (6th Cir. 2009) (finding no improper vouching where the prosecutor "simply mentioned the existence of the plea agreements" with the witness but "did not imply that these agreements ensured that they were being truthful."); *United States v. Trujillo*, 376 F.3d 593, 608–09 (6th Cir. 2004) ("[T]he prosecutor did not offer any personal observations or opinions as to the veracity of [the witnesses], nor did she place the prestige of the Government behind their credibility. Rather, the prosecutor's questions and comments merely encompassed the terms of [the witnesses'] plea agreements . . . ."); *United States v. Tocco*, 200 F.3d 401, 416–17 (6th Cir. 2000) (introduction of plea agreement which contained requirement of truthful testimony, standing alone, was not improper); *Francis*, 170 F.3d at 550 ("We have allowed a prosecutor to refer to the plea agreement of a testifying witness. . . . The prosecutor may elicit testimony about its terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility.") (citation omitted); *see also United States v. Trumbo*, 849 F. App'x 152–53 (6th Cir. 2021) (citing *Reid* and *Trujillo*).

It is certainly possible to stray beyond the permissible boundary of simply referencing the terms of the plea agreement. In *Carroll*, 26 F.3d at 1380, the court identified such a trespass:

> [T]he prosecutor blatantly implied that the Patrick's [sic] plea agreements ensured that the witnesses were truthful; the prosecutor did not give the jury any inkling that the government has no independent means of discerning truthfulness. Further, the prosecutor placed the prestige of the government, and even of the court, behind the credibility of the Patricks, by stating that, if the government or the judge did not believe that the witnesses were being truthful, the witnesses would be in jeopardy. This implied to the jury that the government and the court were satisfied that the witnesses were truthful. This constitutes improper vouching.

*Id.* at 1389.

Petitioner's prosecutor did not make any such statements. The court of appeals determined that the prosecutor had neither stated nor insinuated that BB's or BJ's testimonies were truthful and Petitioner does not contest that determination. To the contrary, Petitioner holds to his claim that mentioning the pleas and the truthfulness requirement was sufficient.

In short, Petitioner has failed to demonstrate that the state court's determination of his vouching claim is inconsistent with or contrary to clearly established federal law. Moreover, Petitioner has failed to demonstrate that the state court's factual determinations supporting its conclusions are unreasonable on the record before it. Accordingly, Petitioner is not entitled to habeas relief on his vouching claim.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: January 6, 2022  /s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge